**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY KOSMAN,<br><br>                    Plaintiff,<br><br>          vs.<br><br>1LIFE HEALTHCARE, INC., AMIR DAN RUBIN, PAUL R. AUVIL, MARK S. BLUMENKRANZ, BRUCE W. DUNLEVIE, KALEN F. HOLMES, DAVID P. KENNEDY, FREDA LEWIS-HALL, ROBERT R. SCHMIDT, and SCOTT C. TAYLOR,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Gary Kosman ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against 1Life Healthcare, Inc. ("1Life" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Iora Health, Inc. ("Parent") and SB Merger Sub, Inc.

("Merger Sub") (collectively with "Parent", "Iora") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all stock reverse-merger transaction valued at approximately $2.1 billion (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a June 7, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, shareholders of Iora will receive shares of newly issued 1Life common stock in a reverse merger, where shareholders of Iora will own approximately 26.75% of the combined company.

3.     Thereafter, on July 6, 2021, 1Life filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.  Significantly, the Registration Statement describes an insufficient process in which the Board rushed through a sales process in which the Board failed to adequately conduct a market check for other potentially interested third parties.

5.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on July 6, 2021, with the SEC in an effort to solicit Plaintiff to vote his 1Life shares in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in breach of the Defendants' fiduciary duties.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for 1Life and Iora, provided by 1Life and Iora to the Company's financial advisors Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) the data and inputs underlying the financial valuation analyses,

if any, that purport to support the fairness opinions created by Morgan Stanley and provided to the Board.

6.     Accordingly, this action seeks to enjoin the Proposed Transaction.

7.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a 1Life stockholder.

9.     Defendant 1Life operates a membership-based primary care platform under the One Medical brand. The company has developed a healthcare membership model based on direct consumer enrollment, as well as employer sponsorship. 1Life is incorporated under the laws of the State of Delaware and has its principal place of business at One Embarcadero Center, Suite 1900 San Francisco, CA 94111.  Shares of 1Life common stock are traded on the NasdaqGS under the symbol "ONEM".

10.    Defendant Amir Dan Rubin ("Rubin") has been a Director of the Company at all relevant times.  In addition, Rubin serves as the Company's President and Chief Executive Officer ("CEO") and as the Chair of the Company Board.

11.    Defendant Paul R. Auvil ("Auvil") has been a director of the Company at all relevant times.

12.    Defendant Mark S. Blumenkranz ("Blumenkranz") has been a director of the Company at all relevant times.

13.    Defendant Bruce W. Dunlevie ("Dunlevie") has been a director of the Company at all relevant times.

14.    Defendant Kalen F. Holmes ("Holmes") has been a director of the Company at all relevant times.

15. Defendant David P. Kennedy ("Kennedy") has been a director of the Company at all relevant times.

16. Defendant Freda Lewis-Hall ("Lewis-Hall") has been a director of the Company at all relevant times.

17. Defendant Robert R. Schmidt ("Schmidt") has been a director of the Company at all relevant times.

18. Defendant Scott C. Taylor ("Taylor") has been a director of the Company at all relevant times.

19. Defendants identified in ¶¶ 10 - 18 are collectively referred to as the "Individual Defendants."

20. Non-Party Iora Health, Inc. is a private company a serving as a technology-powered primary care leader delivering outstanding member-based, value-based care for adults 65+ enrolled in Medicare Advantage and other at-risk reimbursement models. Parent was founded in is headquartered at 101 Tremont Street, Boston, MA 02108.

21. Non-Party Merger Sub is a wholly owned subsidiary of 1Life created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because 1Life maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

25.     1Life operates a membership-based primary care platform under the One Medical brand.

26.     The company has developed a healthcare membership model based on direct consumer enrollment, as well as employer sponsorship. Its membership model includes seamless access to digital health services paired with inviting in-office care routinely covered under health insurance programs. The company also offers administrative and managerial services pursuant to contracts with physician-owned professional corporations or One Medical Entities.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the May 12, 2021 press release announcing its 2021 Q1 financial results, the Company highlighted such milestones as net revenue up 54% year over year and membership count up 31% year over year.

28.     Speaking on these positive results, CEO Defendant Rubin commented on the Company's positive financial results as follows, "In Q1 we continued demonstrating significant impacts by delivering record membership additions, showcasing reductions in total cost of care, and developing new markets and health network partnerships."

29.     Rubin continued, touching on the Company's strong future prospects, "Today, we are pleased to announce new plans to enter Dallas-Fort Worth, Texas with Baylor Scott & White as a health network partner. In addition to our nationwide telehealth services, we will soon deliver combined telehealth plus in-person care across 22 markets, extending the reach of our model to markets covering nearly 40% of the U.S. commercially-insured population. As we continue to

expand across the nation, our results demonstrate how One Medical can transform healthcare at scale."

30.    These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by 1Life.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

31.    Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused 1Life to enter into the Proposed Transaction without providing requisite information to 1Life stockholders such as Plaintiff.

***The Flawed Sales Process***

32.    As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

33.    Notably, while the Registration Statement indicates that a subset of independent directors was met during the sales process, the Registration Statement fails to indicate if this subset of directors formed a committee to run the sales process, and if so, what specific powers such a committee had.

34.    Additionally, the Registration Statement indicates that that no market check for potentially interested third parties was conducted at any point during the sales process by the Board, or anyone on its behalf.

35.    In addition, the Registration Statement is also unclear as to the existence or nature of any non-disclosure agreement entered into between 1Life and any potentially interested third party, including Iora, as part of the sales process, and if the terms of any such agreements differed from one another, including any "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific differences therein including differences in the conditions, if any, under which such provisions would fall away.

36.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

**The Proposed Transaction**

37.     On June 7, 2021, 1Life issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **SAN FRANCISCO –** June 7, 2021 – 1Life Healthcare, Inc. (One Medical) (Nasdaq: ONEM), a leading human-centered and technology-powered primary care organization, today announced it has entered into a definitive agreement to acquire Iora Health, a human-centric, value-based primary care group with built-for-purpose technology focused on serving Medicare populations, in an all-stock transaction valued at approximately $2.1 billion.
>
> "We are delighted to announce plans to combine with Iora Health, a technology-powered primary care leader delivering outstanding member-based, value-based care for adults 65+ enrolled in Medicare Advantage and other at-risk reimbursement models. Together we will expand our addressable market to serve more members in more geographies with digital and in-person care across every stage of life, with further capabilities to deliver care within full-risk models. Together with Iora Health, we can deliver better health, better care, and lower costs for children, adults, and seniors." said Amir Dan Rubin, Chair & CEO of One Medical.
>
> "Chris McKown and I founded Iora Health over 10 years ago to build an innovative primary care model that transforms lives and improves outcomes through relationship-based care, and we are excited to take this next exciting step with One Medical," said Rushika Fernandopulle, M.D., MPP, Co-Founder and Chief Executive Officer of Iora Health. "Together, with our aligned cultures, shared mission, and complementary models, we can drive even greater impact for our patients, our teams, and our investors, and most importantly, our shared vision of transforming healthcare."
>
> One Medical and Iora Health are aligned in their missions, models, and cultures to transform healthcare for key stakeholders -- Consumers, Employers and Payers, Providers, and Health Networks. Together, the two companies can further accelerate and build upon their impacts for these stakeholders, while simultaneously expanding their models in existing markets, entering new markets, serving new populations, expanding full-risk models, and leveraging their purpose-built technologies for increased growth and scale
>
> Strategic and financial benefits of the transaction include:

• Creates a premier national member-based, technology-powered primary care platform to deliver better health, better care, and lower costs across Commercial and Medicare populations;

• Positions One Medical with Iora Health to advance the health of members across every stage of life;

• Extends One Medical's platform to deliver multi-modal care with 24/7 national digital health and in-person care across a combined 28 markets and beyond;

• Expands potential market opportunity to $870 billion across Commercial and Medicare segments, including the new Medicare Direct Contracting program;

• Enhances One Medical's risk-taking capabilities and extends One Medical into full-risk Medicare reimbursement models;

• Amplifies the power of purpose-built technologies to deliver premier member experiences, population health, provider support, and value-based care across every stage of life;

• Accelerates the expansion of two high-growth organizations, with complementary cultures and models serving as a premier place to practice modernized healthcare; and,

• Offers an opportunity to create significant value, with an expected $350+ million in annual revenue synergies by 2025, ~$30 million in annual net cost synergies by 2025, and with ~$30 million in cumulative capex savings through 2025.

"One Medical has proven its ability to drive profitable membership growth, engage with members, improve health outcomes and lower costs. I am excited at the prospect of creating even more differentiation by adding Iora Health's Medicare-focused capabilities, expanding our reach to 28 markets, and offering our service experience to the parents and grandparents of our 598 thousand members," said Bjorn Thaler, Chief Financial Officer, One Medical.

Leadership and Governance

A designee of Iora Health will join the One Medical Board and Rushika Fernandopulle will become One Medical's Chief Innovation Officer.

Transaction Details

Under the terms of the agreement, Iora Health shareholders will receive 56.1 million shares of One Medical common stock. Based on the closing share price of One Medical's common stock of $35.59 on June 4th, 2021, the total transaction is valued at approximately $2.1 billion. Upon completion of the transaction, Iora

COMPLAINT

Health shareholders are expected to own approximately 26.75% of the combined company.

The transaction is expected to close in late Q3 or Q4 of 2021 and is subject to customary closing conditions, including approval by One Medical and Iora Health stockholders and receipt of regulatory approval.

Advisors

Morgan Stanley & Co. LLC served as exclusive financial advisor to One Medical and Cooley LLP served as legal advisor.

Credit Suisse served as exclusive financial advisor to Iora Health and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor.

**The Materially Misleading and/or Incomplete Registration Statement**

38.    On July 6, 2021, the 1Life Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation their fiduciary duties, failed to provide Plaintiff in his capacity as a company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to the Company's stockholders such as Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39.    Specifically, the Registration Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

    a.    Further information regarding the "Board subgroup" of independent directors that met during the sales process, including:

        i.    If said subgroup was a committee of independent outside directors which was created to run the sales process, and if so, the powers said committee had to that end;

      ii.  If said subgroup was not a committee of independent outside directors which was created to run the sales process, further information as to the specific reasoning why no such committee was created;

  a.  The specific reasoning as to why no market check for potentially interested third parties was conducted by the Board or anyone on its behalf during the sales process;

  b.  Sufficient information regarding the existence or nature of any non-disclosure agreement entered into between 1Life and any potentially interested third party, including Iora, as part of the sales process, and if the terms of any such agreements differed from one another; and

  b.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders, including Plaintiff.

*Omissions and/or Material Misrepresentations Concerning 1Life and Iora's Financial Projections*

40.    The Registration Statement fails to provide material information concerning financial projections provided by 1Life and Iora management and relied upon by Morgan Stanley in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

41.    The Registration Statement indicates that in connection with the rendering of their fairness opinion, Morgan Stanley reviewed, "reviewed certain financial projections prepared by the managements of Iora and 1Life, respectively."

42.     Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that 1Life and Iora management provided to the Board and Morgan Stanley.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

43.     With respect to the "1Life Management" set of projections, the Registration Statement fails to provide material information concerning the financial projections prepared by 1Life management.  Specifically, the Registration Statement fails to disclose all material line items for the metrics of:

> a.  Care Margin, including the specific underlying metrics of: operating income, depreciation and amortization, general and administrative expense and sales and marketing expense;
>
> b.  Adjusted EBITDA, including the underlying metrics and adjustments of: net income, interest, taxes, depreciation and amortization and is presented before the impact of stock-based compensation expense; and
>
> c.  Unlevered Free Cash Flow, including the underlying metrics of: cash tax expense, capital expenditures, changes in working capital, as well as the specific inputs and assumptions related to the assumptions regarding an illustrative 25% tax rate and potentially favorable tax attributes of NOLs.

44.     With respect to the "Iora Seller Case" set of projections, the Registration Statement fails to disclose material information concerning the financial projections prepared by Iora management and adjusted by 1Life Management.  Specifically, the Registration Statement fails to disclose all material line items for the metrics of:

    a.   Care Margin, including the specific underlying metrics of: operating income, depreciation and amortization, general and administrative expense and sales and marketing expense;

    b.   Adjusted EBITDA, including the underlying metrics and adjustments of: net income, interest, taxes, depreciation and amortization and is presented before the impact of stock-based compensation; and

    c.   Unlevered Free Cash Flow, including the underlying metrics of: cash tax expense, capital expenditures, changes in working capital, as well as the specific inputs and assumptions related to the assumptions regarding an illustrative 26% tax rate and potentially favorable tax attributes of NOLs.

45.    With respect to the "Iora Base Case" set of projections, the Registration Statement fails to disclose material information concerning the financial projections prepared by Iora management.  Specifically, the Registration Statement fails to disclose all material line items for the metrics of:

    a.   Care Margin, including the specific underlying metrics of: operating income, depreciation and amortization, general and administrative expense and sales and marketing expense;

    b.   Adjusted EBITDA, including the underlying metrics and adjustments of: net income, interest, taxes, depreciation and amortization and is presented before the impact of stock-based compensation; and

    c.   Unlevered Free Cash Flow, including the underlying metrics of: cash tax expense, capital expenditures, changes in working capital, as well as the specific inputs and assumptions related to the assumptions regarding an illustrative 26% tax rate and potentially favorable tax attributes of NOLs.

46.    With respect to the "Synergies Case" set of projections, the Registration Statement fails to disclose material information concerning the financial projections prepared by 1Life

Management.  Specifically, the Registration Statement fails to disclose all material line items for the metrics of:

      a.   Total Adjusted EBITDA, including the specific inputs and assumptions utilized to normalize the synergies.

47.    The Registration Statement also provides non-GAAP financial metrics in all projection cases, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

48.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.    Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's or Iora's true worth, the accuracy of Morgan Stanley's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

50.    In the Registration Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

51.    With respect to the *Selected Publicly Traded Companies Analysis* – Iora, the Registration Statement fails to disclose:

      a.   The specific inputs and assumptions used to determine the utilized multiple reference ranges.

52.     With respect to the *Discounted Future Value Analysis* – Iora, the Registration Statement fails to disclose:

      a.  The specific inputs and assumptions used to determine the utilized 2023E revenue multiples range of 7.0x – 9.0x;

      b.  The specific inputs and assumptions used to determine the utilized cost of equity rate of 8.6%, upon which the utilized discount rate was based; and

      c.  Iora's mid-point cost of equity derived.

53.     With respect to the *Discounted Cash Flow Analysis* – Iora, the Registration Statement fails to disclose:

      a.  The present value of the unlevered forecasted free cash flows of Iora calculated;

      b.  The terminal range for Iora calculated;

      c.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 2.5% to 3.5%;

      d.  The specific inputs and assumptions used to determine the utilized discount rate range of 7.8% to 9.3%;

      e.  Iora's estimated weighted average cost of capital;

      f.  The present value of the cash from the future capital raises done by Iora; and

      g.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate 0% as applied to the Synergies.

54.     With respect to the *Selected Publicly Traded Companies Analysis* – 1Life, the Registration Statement fails to disclose:

      a.  The specific inputs and assumptions used to determine the utilized multiple reference ranges.

55.     With respect to the *Discounted Future Value Analysis* – 1Life, the Registration Statement fails to disclose:

      a.  The specific inputs and assumptions used to determine the utilized 2023E revenue multiples range of 8.5x – 11.5x;

b.   The specific inputs and assumptions used to determine the utilized cost of equity rate of 8.9%, upon which the utilized discount rate was based; and

c.   The utilized future aggregate value an assumed net cash balance based on projected net debt balances.

56.   With respect to the *Discounted Cash Flow Analysis – 1Life*, the Registration Statement fails to disclose:

a.   The present value of the unlevered forecasted free cash flows of 1Life calculated;

b.   The terminal range for 1Life calculated;

c.   The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 2.5% to 3.5%;

d.   The specific inputs and assumptions used to determine the utilized discount rate range of 8.0% to 9.4%;

e.   1Life's estimated weighted average cost of capital;

f.   The utilized present value of tax savings from NOLs;

57.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

58.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a public 1Life stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public 1LIfe stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

# FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### <u>(Against All Defendants)</u>

59.     Plaintiff repeats all previous allegations as if set forth in full herein.

60.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

61.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

62.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

64.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

65.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

66.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

67.     Plaintiff repeats all previous allegations as if set forth in full herein.

68.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.   The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of 1Life's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.     The Individual Defendants acted as controlling persons of 1Life within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause 1Life to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled 1Life and all of its employees.  As alleged above, 1Life is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 15, 2021

**BRODSKY SMITH**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*